## No. 9253.
### L. D. DALCOUR VS. C. P. MCCAN ET AL.

Where two defendants were jointly sued for a claim exceeding two thousand dollars and judgment was rendered as prayed, and only one appeals, the Supreme Court has jurisdiction, although the appellant is liable only for one-half and that half is less than the appealable sum.

The holder by transfer of tickets, consisting of paste-boards bearing no date and no promise to pay, but figures calling for an amount of money, issued to plantation laborers for labor, issued by one of the partners without the knowledge or consent of his co-partner, cannot recover against the latter, in default of proof of actual indebtedness by the partnership to such of his transferrers, and of a *bona fide* transfer from the original creditor to him.

Labor tickets, thus issued, are not written evidences of indebtedness, binding on the alleged debtor, and the indebtedness of the planter must be proved by competent evidence.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

### R. T. Beauregard and H. Chiapella for Plaintiff and Appellee.

Assignment of an incorporeal right may be made verbally. All verbal contracts are valid, unless expressly required to be reduced to writing. Succession of Delassize. 8 Rob. 260 ; Hughes vs. Harrison et al., 2 La. 89-92; Gray vs. Trafton, 12 M. 702.

In the transfer of credits, rights or claims to a third person, the delivery takes place between the transferrer and transferee by the giving of the title. R. C. C. 2642.

The tradition of incorporeal rights is to be made either by the delivery of the titles and of the act of transfer, or by the use made by the purchaser, with the consent of the seller. R. C. C. 2481.

Notice to the debtor is only required as to third persons. 30 A. 386, Pinard vs. George; R C. C. 2643.

Where one, by his words or conduct, wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. Marsh vs. Smith, 5 Rob. 523, and authorities there cited ; Bigelow on Estoppel, p. 473.

When there is no agreement respecting administration in the act of partnership, the partners are supposed to give reciprocally to each other the power of administering one for the other. What one does is valid even for the share of his partners without receiving their approbation. " * * every partner has a right to bind his partners to contribute with him to the expenses which are necessary for the preservation of the things of the partnership. * * * R. C. C. 2870.

A partner cannot plead ignorance of the acts of his co partner, nor of his business manager. when acting within the scope of his authority. 6 R. 97; 3 R. 256; 1 A. 432; 5 A. 532.

In an ordinary partnership, if one partner contracts without authority from the other, and the partnership is benefited, all partners will be bound jointly. Lagan vs. Cragin, 27 A. 353; R. C. C. 2874.

### Rouse & Grant for Defendant and Appellant.

A memorandum, such as the so-called laborer's ticket sued on in this case, having no date, containing no promise to pay a sum certain to any particular person, at a time certain, is not a note or bill, negotiable under the law merchant, nor is it assignable by delivery. Story on Promissory Notes, pp. 1, 16. 19.

Proof cannot be received to create a note out of such memorandum, where the ambiguity is thus patent. Peake's Evidence, Chap. 2, § 5; Turnbull vs. Cureton, 9 M. O. S. 39.

A note or bill made by an agent, in his own name, does not bind the undisclosed principal. Daniels vs. Burnham, 2 L. 243; Cragin vs. Lovell, 111 U. S. 194.

One joint owner of a plantation cannot bind the other by any contract made, either in his own name, or that of the agricultural partnership, unless it be made by the managing partner pursuant to special powers conferred by the articles of partnership, which have been duly recorded, or unless it be shown that the partnership has been benefited thereby. C. C. 2872-4, 2875.

In such cases, the burden of proof of authority: and of the consideration, rests upon the plaintiff. Dumatrait vs. Gay, 1 R. 62.

Payment of one of several unauthorized contracts, does not stop a defendant from disputing the others. Ibid.

A managing partner who has not special authority, cannot bind the firm by an agreement to pay the debt of a third person.

Nor is parol evidence admissible to prove such an agreement. R. S. § 1443; Merz vs. Labuzan, 23 A. 747; Levy vs. Dubois, 24 A. 401.

Delivery of a memorandum of an account does not operate as an assignment of the account to the holder of the memorandum.

A creditor who has disabled himself from producing the obligations sued on, by delivering them to a third person and taking his individual receipt for them, cannot show the amount due on them by parol evidence. Adams vs. Gaynard, 5 N. S. 249

The superior evidence must have been lost or destroyed without the fault of the creditor, to entitle him to offer inferior. Stockdale vs. Escaut, 4 M. 564.

And the defendant, if the evidence is supposed to be in his possession, must have been called upon to produce it. Erwin vs. Porter, 5 N. S. 167, 388; Williams vs. Benton, 12 A. 91.

Where the amount of any obligation to pay money is expressed in figures, proof must be made that it was given for the amount so expressed. R. S. § 1458.

Obligations issued to be used as money, for a less sum than five dollars each, are null and void under Section 887 of the Revised Statutes, which forbids any person to make or receive them under pain of a penalty of twenty-five dollars.

The giving of a receipt for this class of prohibited paper, or creating a new obligation based upon them, does not relieve the transaction of the taint of illegality. Cotton vs. Brien, 6 R. 115; Davidson vs. Lanier. 4 Wallace, 447; Brown vs. Tarkington, 3 Wallace, 337; Boutner vs. Yarborough, 12 A. 249.

The illegality of a part of a transaction taints the whole, and Courts of justice will not adjust the balance of profit and loss between joint adventurers in iniquity Chatter vs. Becket, 7 Tenn. R. 201; Bird vs. Appleton, 8 Tenn. R. 562; John DeBersti vs. Paige, 36 N. Y. 537; Pettit vs. Pettit, 32 Alabama, 288; Collins vs. Murrell, 2 Metcalf (Ky.), 163.

It is only when the party seeking to enforce the illegal agreement, is not himself a wrongdoer, that courts will separate the good from the bad. Bank et al. vs. King, 44 N. Y. 87.

---

## ON MOTION TO DISMISS.

The opinion of the Court was delivered by

MANNING, J. The prayer of the plaintiff is that the two defendants be jointly condemned to pay him $2,480.35. Judgment was rendered as prayed, and a remittance of a small sum having been made, the judgment was reduced to $2,425. M'Can alone appeals.

The motion to dismiss is on the ground that the judgment being against two defendants jointly, one of whom is content therewith, the amount in dispute *quoad* the appellant is only $1,212.50.

It is true that each defendant is liable for one-half of the demand alone but the whole is in dispute. Each item of the whole is contested in order to reduce the amount or altogether extinguish it. If the judgment had rejected the whole, the plaintiff could unquestionably have appealed. His demand was for over two thousand dollars. He must prove the whole in order to obtain a judgment for any part against the appellant.

The judgment that we should render, if we agreed with the lower Court, would be for $2,425, although the appellant could only be held to pay one half of it. Suppose one of the defendants had confessed judgment, the examination of the case as to the other involves the examination of the whole claim. The point has been ruled several times adversely to the mover. Lartigue v. White, 25 Ann. 291 and 325; State ex rel. Sc. Bd. v. Cousin, 31 Ann. 297; State ex rel. St. Cyr. v. Jumel, 34 Ann. 201.

The motion is refused.

Chief Justice Bermudez and Justice Todd dissenting.

## DISSENTING OPINION.

BERMUDEZ, C. J. In order to determine the question of jurisdiction of a Court of original jurisdiction, the rule is simply, to ascertain whether, at the bringing and decision of the suit, the Court had authority to determine it, on its merits, for the plaintiff.

The rule is analogous to test the jurisdiction of an appellate court, namely: Whether at the date of the appeal, the court to which the appeal is returnable, had jurisdiction over the matter. The question of subsequent investiture and that of a fund to be distributed, do not arise in the case.

The matter in dispute is the thing contended for,—the bone of contention—which, on a trial of the merits, the court can allow or refuse, as the evidence and the law may authorize.

The matter in dispute, the *bone of contention*, between the plaintiff and the defendant appellant, is a claim for $1,212.50.

If this Court can render a judgment on a matter exceeding $2,000, it would either affirm, reverse, or amend the judgment of the lower Court.

How could this be done in the absence of the defendant, who has not appealed and who would thereby be either condemned, or relieved in whole, or in part?

The conclusion is irresistible that the matter in dispute, in th case, *ab initio* and to the present day, has been and is a claim of $1,212 , against the appellant and that, under no contingency, can this co render a judgment, even if to the full of plaintiff's demand, as to a pellant, for more than that amount. 4 R. 319.

The authorities to which the appellant refers are in cases in which the appellate court could have rendered in favor of the plaintiff, against the appellant, judgment for an amount within its jurisdiction. They have therefore no bearing upon a case like the present one, in which no valid judgment, for an amount exceeding $2,000, can be rendered under the pleadings, unless *ultra petitum*.

Justice Todd concurs in this opinion.

## ON THE MERITS.

POCHÉ, J.　Charles P. McCan, one of the defendants, has taken this appeal from a judgment rendered against him and his co-defendant, Alphonse C. Reggio, in the sum of $2425 20, on a claim of plaintiff, as a holder of labor tickets or evidences of indebtedness issued in favor of laborers of the defendants, as joint owners of the "Promised Land Plantation," in Plaquemines parish, and as ordinary partners in the cultivation of said plantation.

Plaintiff alleges that he is a store-keeper in the neighborhood of said plantation, and that in exchange for goods sold and delivered to laborers on the defendants' plantation, a number of labor tickets of different denominations and amounting together to the sum which he claims were transferred to him by the defendants' laborers, with the knowledge and consent of said defendants; that at the request of one of the partners, Alphonse Reggio, he surrendered a large number of tickets thus received and held by him, amounting in the aggregate to $1751 85, for which he holds the receipt of said Reggio, and that for the balance he still holds a number of the tickets as above stated, which he annexes to his petition.

The defence is a general denial.

The undisputed facts in the case are as follows:

From June, 1882, to February, 1883, Charles P. McCan and Alphouse C. Reggio, who were joint-owners of the "Promised Land Plantation," cultivated the same as ordinary partners under a verbal agreement, which stipulated in substance, that the management of the labor and cultivation of the plantation was under the control of Alphonse Reggio, and that Charles P. McCan was entrusted with the management of the

financial affairs of the concern, with the obligation to advance the funds necessary to the business and with the authority to sell and dispose of the crops raised and made on the plantation.

In order to facilitate his settlement with the laborers employed on the plantation, the defendant, Reggio, adopted the system of issuing every night, to each laborer, a ticket or tickets representing in figures the amount of such laborer's earnings for the day.

Those tickets, consisting of pasteboards' of various colors, according to their denomination, contained the name of the plantation and an amount in figures, thus: 10c., or 25c., or 100c., or 500c., and contained the signature of Edward Reggio, a brother of the defendant, Alphonse Reggio, who was employed as clerk or time-keeper on the place, and who signed the tickets under his brother's directions; but the tickets contained no mention or statement of the quality in which he thus signed them, and they contained no date or no information showing that they represented a promise to pay for labor or for any other commodity.

It further appears, that at the end of each month, the tickets issued during the current month, were taken up and paid for, to the laborers or to the plaintiff, or to the neighboring butcher, with funds furnished by the defendant, McCan, either on the personal call of his co-partner or on the latter's draft, and that, in the month of December, the defendant, McCan, refused the funds necessary to pay for the tickets then held by plaintiff, on the ground that he had not authorized the issue of such tickets by his co-partner, or by any other person employed on or connected with the said plantation. Hence this suit.

Plaintiff's contention is, that he is entitled to recover as the *bona fide* transferee of claims held against the defendants, for valid consideration and on actual delivery of such claims.

In oral argument and in his brief, appellant urges numerous grounds of resistance to the claims in so far as he is personally concerned. We shall consider but one or two of the means of defence which he invokes and which are sufficient to defeat plaintiff, at least in his present action.

It is conceded on both sides and it is clearly undeniable, that the tickets by themselves, and unexplained by parol testimony, are absolutely meaningless and cannot be treated as the basis of a written contract or obligation.

Hence, it follows, that they are and can be considered as nothing more than *memoranda* of amounts earned by the laborers and due by their employers, the sole value of which, as between the contracting

parties, rests on a previous agreement and understanding between them, that each ticket, according to its denomination, is a certificate of the amount due to the bearer for the fractional part of a day, or of a whole day, or of two or more days. But the essence of the claim rested on the fact, that labor of the value represented by the figures found on the tickets had actually been performed by the laborer, and not on the fact of his being the holder of the ticket. It is too plain for argument that a party who would be shown by the time-book to have earned three dollars, could not legally enforce a claim as such laborer for tickets calling for thirty dollars.

We therefore conclude that plaintiff, in receiving the tickets which he sues upon, acquired no more rights against the defendants than each laborer could show for actual labor done,—and as the record fals to show a notice,—binding on McCan, the financial manager of the firm, of the assignment of the laborer's incorporeal rights, he could enforce no claim which McCan might in the meantime have settled with the original transferrer. C. C. Art. 2644.

The evidence on the question of McCan's knowledge or consent as to the mode of payment adopted by his co-partner, is conflicting. The circumstances invoked by plaintiff, as proving such knowledge, are not conclusive. Among them is the payment of Reggio's drafts, some of which were in favor of plaintiff himself in order to redeem past issued tickets. But nothing shows, and it is not even suggested, that the drafts were in any manner identified with the tickets.

It is contended that McCan, who resided in New Orleans, frequently visited the plantation, and that he must have found out that tickets were thus issued, bargained with plaintiff, and redeemed with his funds. But, it appears that neither of the Reggios, the principal factors, and who were both witnesses for plaintiff, in the whole transaction, even testify that McCan was informed of the adoption of that system by the manager of the plantation.

On the other hand, McCan solemnly swears, and he is uncontradicted by any other witness, that he was absolutely ignorant of the existence of such tickets until the latter part of the year, when he acquired the first knowledge of the same, and that he promptly ordered that no funds of his should be used in order to redeem these tickets. He does not refuse payment of wages which may be *bona fide* due to any laborer on the place, but he denies any obligation to recognize and redeem such tickets as evidences of indebtedness for labor.

His general denial puts at issue any indebtedness to the transferrers of plaintiff on account of said tickets, as well as the averment that plaintiff is the *bona fide* transferee of any claims which the transferrers may have had against the firm.

If those tickets can be construed as a valid obligation in writing for the payment of money, and as the record fails to show any authority in Reggio to thus bind the firm, it was incumbent on plaintiff to prove that the partnership was benefited by the transaction.  (C. C. 2872-2874.)  If, as we hold, the tickets are not and cannot be construed, as written evidences of indebtedness, but as merely *memoranda* for the guidance of employer and laborer in their settlement; and that the proof of indebtedness results from the contract and from the labor done, to be proved *aliunde*, it was incumbent on plaintiff to show an indebtedness for labor from the partnership to each of the transferrers.

In either hypothesis plaintiff's claim finds no support in the evidence.

He concedes in his brief that his ownership of the tickets resulted from his trade with several hundred persons, and that it would be impossible to bring them all in court.

This is a consideration which courts of justice cannot entertain.

Under the issues presented in this cause, such proof is indispensable to his right of recovery—and in the absence of it he must fail.

It is therefore ordered adjudged and decreed that the judgment rendered herein against Chas. P. McCan be annulled and set aside; and that plaintiff's claim be rejected, and his action dismissed, as in case of non-suit, at his cost in both courts.

Judgment reversed.